IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHANIE ALEXANDRA R.,[1]

            Plaintiff,

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

Case No.: 3:23-cv-01395-AN

OPINION AND ORDER

      Stephanie Alexandra R. ("plaintiff") brings this action seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner") denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Court has jurisdiction over plaintiff's appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Court affirms the Commissioner's decision.

## BACKGROUND

### A.    Plaintiff's Application

      Plaintiff was born on March 6, 1981, making her thirty-four years old on the alleged onset date of June 1, 2015. Tr. 31. Plaintiff has a high school education and is unable to perform any of her past relevant work as a Home Health Aide. *Id.* In her applications, plaintiff alleges disability due to damage to her thyroid causing hypocalcemia, chronic pain, muscle spasms, nerve damage, asthma and breathing issues, anxiety, depression, and PTSD. Tr. 382, 389.

      The Commissioner denied plaintiff's applications initially and upon reconsideration. Tr. 166-170. On August 4, 2022, plaintiff appeared with counsel for a hearing before Administrative Law Judge ("ALJ") Joyce Frost-Wolf. Tr. 44-71. On August 31, 2022, the ALJ issued a written opinion, finding

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

plaintiff not disabled. Tr. 17-33. The Appeals Council denied review. Tr. 1. Plaintiff now seeks judicial review of the ALJ's final decision.

**B.      Sequential Disability Evaluation**

The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step sequential procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the burden for steps one through four, and then the burden shifts to the Commissioner at step five. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The five-step evaluation requires the ALJ to determine: (1) whether a claimant is "doing substantial gainful [work] activity"; (2) whether the claimant has a "medically determinable physical or mental impairment" or combination of impairments that is severe and either lasts at least a year or can be expected to result in death; (3) whether the severity of the claimant's impairments meets or equals one of the various impairments specifically listed by Commissioner; (4) whether the claimant's residual functional capacity ("RFC") allows the claimant to perform her past relevant work; and (5) whether, given the claimant's RFC, age, education, and work experience, the claimant can make an adjustment to other work that "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1520(a), 416.920(a).

**C.      The ALJ's Decision**

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2015. Tr. 20. At step two, the ALJ determined that plaintiff suffered from the following severe, medically determinable impairments: status-post thyroidectomy with hypoparathyroidism and hypocalcemia, degenerative disc disease of the thoracic spine, degenerative joint disease of the left shoulder with rotator cuff tendinopathy, diabetes mellitus, and obesity. *Id.* At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. *Id.* The ALJ then concluded that plaintiff had the RFC to perform light work

as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> "[She can] occasionally use ramps or stairs, but not use ladders, ropes, or scaffolding; she
> could occasionally perform balancing, stooping, crouching, or kneeling, but she could not
> perform crawling; she could frequently perform reaching, handling, and fingering with the
> left upper extremity; she could not work around heavy machinery with fast-moving parts
> or at unprotected heights; and she could perform tasks that are detailed, but not complex."

Tr. 26. At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 31. At step

five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff

could perform, such as Cashier II (DOT# 211.462-010), a light level occupation with an SVP of 2 and

900,000 positions available and Mail Clerk (DOT# 209.687-026), a light level occupation with an SVP of

2 and 65,000 positions available. Tr. 32. Therefore, the ALJ concluded plaintiff is not disabled. Tr. 33.

## STANDARD OF REVIEW

The district court may set aside the Commissioner's denial of benefits only if the ALJ's

findings are "'not supported by substantial evidence or is based in legal error.'" *Bray v. Comm'r Soc. Sec.

Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880,

882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The district court

"cannot affirm the [ALJ's] decision 'simply by isolating a specific quantum of supporting evidence.'"

*Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999)). Instead, the district court must consider the entire record. *Id.* Where the record as a whole

can support either the grant or denial of benefits, the district court "'may not substitute [its] judgment for

the ALJ's.'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to resolve the conflict with an RFC

restricting plaintiff to tasks that are detailed, but not complex and jobs requiring level 3 reasoning; (2)

failing to reasonably evaluate the medical opinion of Winnie Liu, M.D.; and (3) failing to provide specific, clear and convincing reasons to reject her subjective symptom testimony.

**A.    Step Four Evaluation Process**

Plaintiff argues that the ALJ failed to reconcile the apparent conflict between "detailed but not complex" tasks and Reasoning Level 3 jobs identified by the Vocational Expert ("VE").  Pl.'s Opening Br., ECF [11], at 7-8.  She argues this was a harmful error.  *Id.*  The Commissioner asserts that despite there being no binding authority on this specific issue, the Ninth Circuit Court of Appeals has concluded that there is no apparent conflict between a claimant's RFC including "detailed tasks" and the demands of Level 3 Reasoning.  Def.'s Br., ECF [13], at 10-13 (citing *Monreal v. Kijakazi*, No. 22-55713, 2023 WL 592493, at *1 (9th Cir. Sept. 12, 2023)).

1.    *Legal Standards*

At step four, the ALJ configures the claimant's RFC and determines whether the claimant can perform her past relevant work.  *Johnson v. Colvin*, 31 F. Supp. 3d 1262, 1272 (E.D. Wash. 2014).  Although the claimant bears the burden of proof at this step, the ALJ must make factual findings to support any conclusion.  *Id.* (citing SSR 82-62, 1982 LEXIS 27, 1982 WL 31386, at *4 (Jan. 1, 1982)).  If a claimant establishes that she is unable to perform her past work at step four, the burden shifts to the Commissioner at step five "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite his identified limitations."  *Johnson v. Shalala*, 60 F.3d at 1432; *see* 20 C.F.R. §§ 404.1520(g), 416.920(g).

At steps four and five, the ALJ may rely on the DOT and testimony from a VE to assess a claimant's ability to perform certain jobs in light of her RFC.  20 C.F.R. §§ 404.1566(e), 404.1569, 404.1566(d); *Kilpatrick v. Kijakazi*, 235 F.4th 1187 (9th Cir. 2022); *see Johnson*, 31 F. Supp. 3d at 1273 (finding that an ALJ may rely on a VE's testimony when making factual findings at step four).  As part of this process, occupational information provided by a VE should generally be consistent with the DOT.  SSR 00-04, 2000 LEXIS 8 at *4, 2000 WL 1898704, at *2 (Dec. 4, 2000).  However, when there is an apparent conflict between the VE's testimony and the DOT, the ALJ must elicit a reasonable explanation for the

conflict from the VE before relying on the VE to support a determination or decision about whether the claimant is disabled. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). In order for a VE's testimony to be fairly characterized as in conflict with the DOT, the conflict must be "obvious or apparent." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)); *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (noting that "[w]hen there is an apparent conflict between the [VE's] testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency"); *see* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE [ ] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE [ ] evidence to support a determination or decision about whether the claimant is disabled.").

The VE's testimony may constitute substantial evidence of the claimant's ability to perform such jobs if the ALJ's hypothetical question included all the claimant's limitations supported by the record. *See Robbins v. Comm'r Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the [VE's] opinion has no evidentiary value.").

2.      *Conflict Between the RFC and Reasoning Level 3*

At the administrative hearing, the ALJ asked the VE whether a hypothetical individual limited to performing "tasks that are detailed but not complex" could perform their past work. Tr. 63. The VE answered no, and the ALJ then asked if there would be other jobs available in the national economy. Tr. 64. The VE testified that a hypothetical individual with Plaintiff's RFC would be capable of performing representative occupations of Cashier II, Order Clerk, and Mail Clerk. *Id.* The VE attested that her testimony had been consistent with the DOT. Tr. 66-67.

In her decision, the ALJ determined that plaintiff was capable of performing the jobs of Cashier II and Mail Clerk. Tr. 32. The ALJ reasoned:

"Pursuant to SSR 00-4p, I determined that the vocational expert's testimony concerning the

claimant's residual functional capacity is consistent with the information contained in the DOT and its companion publications and otherwise supported by her jobs analyses and professional experience. The vocational expert explained that the parts of their testimony that were inconsistent with or not contemplated by the DOT and its companion publications—such as the limitations for different types of climbing and reduced use of a single upper extremity—were based on her analyses of how the provided jobs are performed as well as her professional experience. I find that a reasonable explanation for resolving the conflicts between the vocational expert's testimony and the DOT and its companion publications as required by SSR 00-4p and to support relying on the vocational expert's testimony."

*Id.*

Plaintiff argues the ALJ erred by failing to resolve the apparent conflict between her limitation to "detailed but not complex" tasks and the Reasoning Level 3 jobs identified by the VE and relied upon by the ALJ. Pl.'s Br. 7. Plaintiff cites to various district court decisions within the Ninth Circuit as persuasive authority to argue that her RFC is incompatible with the demands a Reasoning Level 3 job would require of her. Specifically, Reasoning Level 3 requires that a claimant "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." *Zavalin*, 778 F.3d at 847 (citing DOT, App. C, 1991 WL 688702 (Jan. 1, 2016)). Plaintiff, however, contends that her limitation to "detailed but not complex" tasks is more congruent with Reasoning Level 2, which requires a claimant "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Pl.'s Br. 8 (citing DOT, App. C, 1991 WL 688702 (Jan. 1, 2016)). Plaintiff relies on the *Zavalin* court's finding that a limitation to "simple, routine tasks" is at odds with Reasoning Level 3 to argue that a limitation to "detailed but not complex" tasks are also inconsistent with Reasoning Level 3 because the phrase is most nearly synonymous with detailed but uninvolved instructions, which is Level 2, not Level 3. *Id.* (citing *Vanessa R. v. Comm'r Soc. Sec. Admin.*, No. 3:18-CV-5719 JLR-JRC, 2019 WL 1586867, at *3 (W.D. Wash. Mar. 28, 2019)). Aside from the assertion that this was harmful error, plaintiff does not go into detail as to how this error would warrant reversal based on her circumstances. *Id.*

Plaintiff and the Commissioner agree that there is no binding authority on this issue. Two

fairly recent cases from the Ninth Circuit have compared DOT reasoning levels with the ALJ's RFC determination to ascertain whether there was an apparent conflict between the two that required the ALJ's resolution.  In *Zavalin v. Colvin*, the court found an apparent conflict when a VE testified that a person with Zavalin's limitation to "simple, routine or repetitive work" could meet the demands of Reasoning Level 3. 778 F.3d at 846-47.  In *Rounds v. Comm'r Soc. Sec. Admin.*, the court found "[t]here was an apparent conflict between Rounds' RFC, which limits her to performing one-and two-step tasks, and the demands of Level Two reasoning, which requires a person to '[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions.'"  807 F.3d 996, 1003 (9th Cir. 2015).  In both *Zavalin and Rounds*, the court compared the language of the RFC to the language of the reasoning levels at-issue, and noted similarities and differences, to determine which reasoning level best matched the RFC described by the ALJ.  *See Zavalin*, 778 F.3d at 847 ("We find the conflict to be plain when we consider, side-by-side, the definitions of Level 2 and Level 3 Reasoning[.]"); *Rounds*, 807 F.3d at 1003 ("The conflict between Rounds' RFC and Level Two reasoning is brought into relief by the close similarity between Rounds' RFC and Level One reasoning.").

The RFC currently before the Court is different from that in *Zavalin* and *Rounds*, so those cases are instructive rather than controlling as to the claimed conflict here.  The ALJ found plaintiff had the RFC to perform "tasks that are detailed, but not complex." Tr. 26.  In her brief, Plaintiff cites *Vanessa R. v. Comm'r Soc. Sec. Admin.* to argue it is plain that detailed, but uninvolved instructions are synonymous with Reasoning Level 2, not 3.  No. 3:18-CV-5719 JLR-JRC, 2019 WL 1586867 (W.D. Wash. Mar. 28, 2019)); Pl.'s Br. 8.  However, the plaintiff's RFC in that case differs from plaintiff's here.  In *Vanessa R.*, the ALJ found that the plaintiff had the RFC to "'understand, remember, and apply, detailed, but not complex, instructions, but not in a fast-paced, production type environment[.]'" 2019 WL 1586867, at *2. The court in *Vanessa R*. utilized *Zavalin*'s method for determining whether an RFC conflicted with a reasoning level by using a "side-by-side" analysis of the RFC and the definition of the reasoning level.  *Id.* The court found that "it is clear that plaintiff's RFC more closely resembles level two reasoning" after comparing her RFC to Reasoning Level 3, but also stated "there may be some room for argument." *Id.*

This Court observes *Vanessa R.*'s holding but concludes that an apparent or obvious conflict is not similarly present for this case.

A court in another instructive case, *Meissl v. Barnhart*, reasons that "[i]nstead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale." 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). The court in *Vanessa R.* seems to have done what the *Meissl* court advised against, as any "careful analysis" was not present other than the observation that the side-by-side RFC and DOT comparisons "employ the same word choice."[2] *Id.* The Court is persuaded by the Commissioner's argument that "ALJs are not required to equate the word 'detailed' with the DOT's use of that term in its reasoning levels when formulating an RFC[,]" and holds that a more holistic review of a claimant's circumstances when comparing their RFC to the DOT Reasoning Levels would better serve the purposes of the Social Security Regulations. Def.'s Br. 11. As the district court in *Meissl* explained:

> "The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); *see also* 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00(C)(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking ... apprehend the most abstruse classes of concepts" at level six). DOT at 1010-1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity."

403 F.Supp. 2d at 984.

Having determined that the ALJ is not completely bound to the "finely calibrated nature

---

[2] The Court in *Vanessa R.* stated, "The operative phrase in the RFC is the ability to carry out 'detailed, but not complex, instructions.'[ ] Level two reasoning requires the ability to carry out 'detailed but uninvolved written or oral instructions,' while level three requires the ability to carry out 'instructions furnished in written, oral, or diagrammatic form.' It is plain to this court that 'detailed, but not complex' instructions is most nearly synonymous with 'detailed but uninvolved' instructions. Therefore, although there may be some room for argument, it seems apparent that there is a conflict between the ALJ's conclusion regarding the applicable reasoning level and plaintiff's RFC." 2019 WL 1586867, at *3 (internal citations omitted).

in which the DOT measures a job's simplicity" and that there must be a more careful review of plaintiff's

RFC against the DOT, the Court concludes that the ALJ in this case properly wrote a "thorough

discussion and analysis of the objective medical and other evidence" when determining Plaintiff's

capacity to "perform tasks that are detailed, but not complex." Tr. 29 (citing SSR 96-8p, 1996 WL

374184, at *3 (July 2, 1996)). There was no apparent conflict for the ALJ to address. The ALJ stated:

> "[T]he objective findings in the medical record and the claimant's statements suggest that
> her mental work-related abilities might be reduced by the effects of her severe thyroid
> condition and hypocalcemia, particularly in terms of understanding, remember, and apply
> information and maintaining concentration, persistence, and pace. Those limitations might
> be further exacerbated by the alleged side-effects of her medications and her nonsevere
> anxiety disorders and PTSD. The residual functional capacity accounts for those limitations
> by restricting the claimant to performing detailed, but not complex, tasks. However, the
> residual functional capacity reflects the claimant's generally normal mental status and
> psychiatric examination findings—with no signs of consistent or persistent behavioral or
> cognitive abnormalities—and limited mental health treatment and her reported functioning,
> all discussed above, which indicated that her mental work-related abilities remain largely
> intact and that [s]he could still perform and sustain a range of semi-skilled and unskilled
> work.
>
> "Pursuant to the regulations, I reviewed and evaluated the opinion evidence included in the
> medical record to develop the residual functional capacity and other findings set forth
> above."

*Id.* (internal citations omitted). Nothing in the record suggests that plaintiff is limited to one-to two-step

tasks akin to the plaintiffs in *Rounds, Wilson* or *Zavalin*, nor has plaintiff presented anything from the record

suggesting she cannot carry out instructions furnished in written, oral, or diagrammatic form as the DOT

guides. Likewise, the record fails to support the notion that the "DOT requirements [] appear more than

the claimant can handle." *Zavalin*, 778 F.3d at 846. On the contrary, the record demonstrates plaintiff's

success in her mental capacities, as the ALJ discussed. *See* Tr. 28 ("[Plaintiff]'s treatment notes and work

history suggest an even higher level of functioning. Her treatment notes show that she went back to school

in 2015 for a social work program and that she later completed that program with honors."); Tr. 24

("[Plaintiff] has worked throughout most of the period at issue, albeit not at SGA, as a Home Health Aide

and more recently as a Groundskeeper."); Tr. 4737 ("7/23/21: Client continues to report[] symptoms of

anxiety and depression"). B*ut see* Tr. 4737. ("[Plaintiff] reports that she was diagnosed with anxiety and

depression in 2006. [Plaintiff] is currently not taking medications."); Tr. 3504 ("Patient reports she is

employed at PCC as an office assistant and also works in resident care in Avemere.").

The ALJ properly considered the mostly mild, if not nonexistent clinical findings of plaintiff's providers regarding her mental capabilities. Tr. 23-24. The ALJ acknowledged the prior administrative medical findings of Drs. Ben Kessler and Winifred Ju that plaintiff had no severe mental impairments at all, thus she did not require mental limitations in her RFC. Tr. 30. The ALJ found those opinions to be partially persuasive, namely that plaintiff's anxiety disorders and PTSD were not severe. *Id.* The ALJ, however, created greater mental limitations in the RFC because of the "combined effects of her severe thyroid condition and hypocalcemia, nonsevere anxiety disorders and PTSD, and alleged side-effects of her medications based on consideration of the [plaintiff]'s longitudinal medical record and statements and her testimony at the August 4, 2022 hearing." *Id.* There is no harm in the "overinclusion of debilitating factors." *Johnson v. Shalala*, 60 F.3d 1428, 1436 n.9 (9th Cir. 1995). Furthermore, when evaluating plaintiff's paragraph B criteria in assessing her mental impairments, the ALJ stated, "[Plaintiff] has had generally normal mental status and psychiatric examination findings indicated that her abilities to understand, remember, and apply information, interact with others, maintain concentration persistence and pace, and adapt and manage herself were no more than slightly limited and that she had no more than mild mental limitations." Tr. 24. It was within the ALJ's province to conclude that the record failed to demonstrate that the "DOT requirements [] appear more than the claimant can handle." *Zavalin*, 778 F.3d at 846. Therefore, after conducting a side-by-side comparison as guided by *Zavalin*, and conducting a "much more careful analysis" in comparing plaintiff's RFC with the DOT's reasoning levels as instructed by *Meissl*, the Court concludes that Plaintiff's ability to perform detailed, but not complex tasks does not explicitly bar plaintiff from Reasoning Level 3 jobs where she would "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *Rounds*, 807 F.3d at 1003; DOT, App. C, 1991 WL 688702 (Jan. 1, 2016). Absent evidence otherwise, plaintiff has not proven harmful error requiring reversal on this issue.

## B.    Medical Opinion of Dr. Liu

### 1.    *Applicable Law*

Plaintiff filed her applications for benefits after March 27, 2017, therefore the current regulations apply. *Tyrone W. v. Saul*, No. 3:19-cv-01719-IM, 2020 WL 6363839, at *6 (D. Or. Oct. 28, 2020) (citing 82 Fed. Reg. 5844, 5867-68 (Jan. 18, 2017)) ("For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence."). Under the revised regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ considers several factors: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important factors in the evaluation process are supportability and consistency." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Using these factors, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each medical provider. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

2.    *Analysis*

Plaintiff began seeing her endocrinologist, Dr. Liu, on September 16, 2021 and continued seeing her every three to four months. Tr. 5797. Dr. Liu filled out a form discussing plaintiff's functional capacity in light of her alleged impairments on August 3, 2022. Tr. 5885. Dr. Liu discussed plaintiff's history with endocrine dysfunction and stated, "[Plaintiff] had her thyroid removed and her parathyroid glands were damaged in the process. She has low parathyroid hormone and thus low blood calcium levels." *Id.* Dr. Liu opined that plaintiff would be off-task from work more than twenty percent of the workday because "low calcium can lead to muscle cramps and she may become confused, depressed, and forgetful and have tingling in her lips, fingers, and feet as well as stiff, achy muscles." Tr. 5887. Dr. Liu also opined that plaintiff would miss more than two days per month due to her symptoms from "low calcium." *Id.*

The ALJ found Dr. Liu's opinion "not persuasive" because she primarily relied on plaintiff's self-reported symptoms and did not cite any relevant examination findings or other objective medical evidence for support. Tr. 30. The ALJ also found Dr. Liu's medical opinion to be inconsistent with her own examination findings and the examination findings of others throughout the medical record that demonstrate she had generally normal musculoskeletal, neurological and other examination findings. The ALJ found that "further limited the probative value of her conclusions." *Id.* (citing Tr. 5412-27, 5488-97, 5797-5805, 5852-63).

Plaintiff argues that the records the ALJ referred to do not support her findings. Pl.'s Br. 9. Specifically, plaintiff argues that the ALJ "cited normal musculoskeletal and neurological findings to reject Dr. Liu, but Dr. Liu's opinion was based upon plaintiff's endocrine dysfunction." *Id.* at 11. However, when looking to the progress notes Dr. Liu provided, they are largely unremarkable regarding plaintiff's calcium deficiency due to her endocrine dysfunction. The ALJ also was not incorrect in citing to normal examination findings during visits with plaintiff's endocrinologist because one of plaintiff's main allegations is that her endocrine dysfunction causes "significant muscle cramping" and chronic pain, both of which could be observed at a visit with Dr. Liu but the ALJ found nothing to substantiate such claims. Tr. 27. For example, on plaintiff's May 9, 2022 visit with Dr. Liu, she discusses plaintiff's lab results that indicate "[c]alcium in 10/2021 was 7.6 and vitamin D 23.6, normal TSH was normal. Vitamin D 2000 units, calcitriol 1mcg daily, calcium citrate 400mcg elemental TID, any more will cause more stomach discomfort. Part of a[n] online group for hypopara patients. Still would like to try Nat Para. Unable to tolerate HCTZ due to low BP." Tr. 5412. Dr. Liu's own observations from the visit were as follows:

> "Poor baseline functioning despite calcium being in the baseline low range. She reports having to go to ER for calcium infusions and did feel better. Currently taking calcitriol 1.5mcg and had jitteriness when she increase to 2mcg daily. On vitamin D and calcium citrate 600mg elemental TID. We reviewed her surgical note from 3/31/1998 with right thyroid lobectomy with isthmectomy and completion left thyroidectomy in 2003."

*Id.* Dr. Liu's plan after this visit was to "increase calcitriol to 1.75mcg taking 1mcg in AM and 0.75mcg in afternoon[,] continue 600mg TID of elemental calcium citrate [and] continue vitamin D[.]" Tr. 5414. These progress notes are largely similar to plaintiff's other visits with Dr. Liu. *See* Tr. 5489-90, 5797-99.

Plaintiff's assertion that the ALJ relied on "completely unrelated examination findings while ignoring five years of emergency department visits[,]" is a mischaracterization of the ALJ's explanation.  Pl.'s Br. 11.

The ALJ discussed the factor of supportability by citing to Dr. Liu's progress notes, which in turn, referenced plaintiff's reported emergency department visits.  Tr. 27.  Regardless of whether or not the ALJ addressed plaintiff's "five years of emergency department visits[,]" the pertinent inquiry here is whether the objective medical evidence and supporting explanations presented by Dr. Liu support *her* medical opinion.  *Id.*; 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1).  The ALJ determined that the objective medical evidence and supporting explanations presented by Dr. Liu were not persuasive, as Dr. Liu did not refer to any of her visits or labs done by plaintiff, nor does a *de novo* review of the objective evidence during plaintiff's visits match Dr. Liu's more extreme limitations such as being off-task more than twenty percent of the workday.  The ALJ cited Dr. Liu's progress notes that fail to endorse any patterns of "muscle cramps[,] confus[ion], depres[sion], or forgetful[ness]" nor do they endorse that plaintiff had "tingling in her lips, fingers, and feet as well as stiff, achy muscles."  Tr. 5887.  The ALJ's reasoning in discrediting Dr. Liu's medical opinion is not unsupported, as it seems many of the above symptoms are indeed based on "[plaintiff]'s self-reported symptoms[.]"  Tr. 30.  Plaintiff points to many of her conversations with Dr. Liu to argue that "Dr. Liu's explanation did not rely on plaintiff's subjective complaints, but her specialty in endocrine medicine" and that any "singular examination results" that may appear normal do "not undermine the doctor's familiarity with [p]laintiff's ongoing complaints as well as her knowledge of symptoms attributable to [p]laintiff's multiple endocrine disorders."  Pl.'s Br. 10.  Plaintiff explains the objective findings that support Dr. Liu's opinion are plaintiff's low calcium levels and repeated ED visits for calcium infusions.  *Id.* at 11.  However, the only objective findings in Dr. Liu's progress notes regard plaintiff's lab results that show varying calcium levels at different times, to which she prescribed higher dosages of calcium for Plaintiff to take by mouth if the results were too low.  Tr. 5436.  Regarding the factor of consistency, plaintiff does not allege error to the ALJ's evaluation, and in turn, the Court will not disturb the ALJ's findings.  The Court therefore finds no error in the ALJ's evaluation of Dr. Liu's medical opinion, and such evaluation is supported by substantial evidence.

C.    **Symptom Evidence**

The ALJ is responsible for evaluating symptom testimony.  SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms.  *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so."  *Id.*  Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence.  *Holohan*, 246 F.3d at 1208.  To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince."  *Smartt*, 53 F.4th at 499.

1.    *Subjective Symptom Testimony*

At the hearing, plaintiff testified that she was unable to sustain full-time work due to her thyroid issues, namely her hypocalcemia, which affects her memory and can cause depression or anxiety. Tr. 60.  She stated that when her calcium levels are "extremely low, it can cause me to have depression side effects and anxiety and irritability."  *Id.*  She explained that she could still do chores at home, but that she needed to take breaks.  Tr. 57.  Plaintiff also discussed her part-time job at Portland Community College

taking care of a garden, where she is allowed a flexible schedule.  Tr. 55-56.

The ALJ used the "factors outlined in SSR 16-3p" and evaluated plaintiff's statements about the "intensity, persistence, and limiting effects of her symptoms and determined that they were not generally consistent with the record as a whole. The alleged severity of [plaintiff]'s symptoms was inconsistent with her courses of treatment, limited positive musculoskeletal, neurological, and other examination findings, and reported functioning."  Tr. 27.  The ALJ also discounted plaintiff's subjective symptom testimony because: (1) her thyroid condition and hypocalcemia have responded positively to treatment; (2) her testimony is inconsistent with the objective medical evidence; (3) she did not comply with prescribed treatment; and (4) her activities of daily living were inconsistent with her allegations of debilitating symptoms.  plaintiff takes issue with reason two.

2.    *Objective Medical Evidence*

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence.  20 C.F.R. § 404.1529(c)(1)-(3); SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017).  A lack of objective medical evidence, however, may not form the sole basis for discounting a claimant's testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 U.S. Dist. WL 5924505, at *4 (D. Or. Nov. 10, 2018).  But when objective medical evidence is coupled with other permissible reasons, it may be used to discount a claimant's testimony. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004); *Adaline S. G. v. Comm'r Soc. Sec. Admin.*, No. 6:20-cv-01129-AC, 2021 WL 5316987, at *3 (D. Or. Nov. 15, 2021).

Plaintiff asserts that the ALJ's reliance on "unremarkable neurological and musculoskeletal findings to undermine her endocrine disorder" was not a clear and convincing reason to discount her testimony.  Pl. Br. 12.  Plaintiff is correct that a lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Reddick*, 157 F.3d at 722.  However, the ALJ discussed the longitudinal findings showing that the objective medical evidence was inconsistent with plaintiff's testimony. *See* Tr. 24-25, 27, 29.  For example, the ALJ acknowledged plaintiff's thyroid issues, back

condition, left shoulder issues, diabetes mellitus, and obesity. Tr. 27. The ALJ stated that on examination, plaintiff had inconsistent or isolated positive findings, with the most consistent examination findings concerning her left should between January and June 2017. *Id.* The ALJ then stated that her left shoulder issues were largely resolved with physical therapy at the end of June 2017. Of particular importance to plaintiff's claims that her thyroid condition and hypocalcemia affected her mental work-related functioning, the ALJ discussed how examinations regularly showed normal mental status and psychiatric examination findings with "no signs of consistent or persistent behavioral or cognitive abnormalities throughout the period at issue." Tr. 24, 27 (citing Tr. 1040-45, 1864-65, 1869-72, 3308, 4737-44). Plaintiff further argues that "[s]he did not improve with treatment. She did not have more aggressive treatment to pursue other than going to the Emergency Department [to increase her calcium levels]." Pl.'s Br. 13. Not only is plaintiff solely requesting a different interpretation of the evidence, which is not an error subject to reversal, the ALJ found evidence in the record to support plaintiff's lack of participation in treating her hypocalcemia. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The ALJ stated:

> "In evaluating the severity of the claimant's symptoms under SSR 16-3p, I took particular note of her irregular treatment with endocrinologists and noncompliance with prescribed treatment. The claimant's medical record shows that her severe thyroid condition and hypocalcemia was a difficult condition to treat, but also that the difficulty was greatly complicated by the claimant's poor participation in treating it. As noted above, the claimant did not seek or maintain consistent treatment with endocrinologists throughout the period at issue, instead she had to repeatedly reestablish care with them. Even when the claimant was treating with an endocrinologist, she was noted to not comply with laboratory orders, taking medications, or follow-up instructions. If the effects of the claimant's severe thyroid condition and hypocalcemia were as severe as alleged, in terms of fatigue, pain, and other symptoms, they would have likely prompted the claimant to engage treatment more actively and consistently. The claimant's failure to do so indicates, however, that her fatigue, pain, and other symptoms were not as intense or limiting as alleged."

Tr. 28. Plaintiff does not argue against this finding, but what the ALJ's explanation demonstrates is that plaintiff's last resort in controlling her hypocalcemia was not solely the emergency department, but the record demonstrates there were many opportunities for plaintiff to control her calcium levels at home after following prescribed treatment plans from Drs. Vanek, Johnson and Liu. *See* Tr. 1261 5424, 5854, 4878 ("She was given a dose of 1 g IV calcium gluconate, along with 2 g of oral calcium carbonate to sustain her calcium levels as she has not been taking her usual oral medications. . . It is noted that she has only had 1

dose of medication to help with her symptoms since her previous ED visit."); Tr. 5382, 5395, 5399, 5411, 5432, 5475 ("Patient taking [calcium citrate 200 mg elemental (950 mg total salt) oral tablet] differently."). Noncompliance with treatment may form the basis for an adverse credibility finding. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment may be considered in assessing credibility as to severity of pain); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (noncompliance with prescribed course of treatment is a relevant factor in assessing credibility).

Contrary to plaintiff's suggestion, SSR 03-02p requires that the ALJ view the record as a whole to establish a longitudinal picture of her functioning. 2003 WL 22399117 (Oct. 20, 2003). The ALJ did so here, explaining how plaintiff's daily activities, improvement with treatment, refusal to follow treatment, and medical evidence were inconsistent with her allegations. The ALJ's findings are supported by substantial evidence, are a reasonable interpretation of the record, and will not be disturbed. *Burch*, 400 F.3d at 679 (holding that even if evidence is susceptible to more than one rational interpretation, ALJ decision must be upheld).

## CONCLUSION

For the reasons set forth in this opinion, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 23rd day of July, 2024.

_____
Adrienne Nelson
United States District Judge